UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA,

MEMORANDUM & ORDER

07-cr-870

-against-

EDGAR ADAM MATOS,

Defendant.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On October 22, 2008, the Government filed a Supplemental Submission in Connection with the Defendant's Suppression Motion (Docket Entry # 44 ("Submission")), requesting that the court re-open the suppression hearing to allow additional evidence and to reconsider the decision rendered in its September 23, 2008 Memorandum & Order (Docket Entry # 36 ("M & O")). The defense opposed the motion on November 8, 2008, by affirmation (Docket Entry # 46 ("Opp.")), and the court heard oral argument on November 14, 2008. The Government argues that the court's factual findings set forth in the M & O were erroneous, and challenges the court's central determination that the testimony of Government witnesses Deputy U.S. Marshal ("DUSM") Dennis Tait and New York City Police Department Detective Adam Heege was not credible. The Government asks the court to re-open the suppression hearing in order to allow the testimony of six additional Deputy U.S. Marshals ("DUSMs") from the Fugitive Task Force Team, as well as additional statements from DUSM Tait and Det. Heege. According to the Government, these witnesses can "corroborate the suppression hearing testimony" of DUSM Tait and Det. Heege, bolster the credibility of those officers, and "provide context for the actions of the Fugitive Task Force" team on that date. (Docket Entry # 48, 3-4 ("Reply").) To justify this

1

belated request, the Government submits that it previously viewed this additional testimony as "cumulative" and therefore unnecessary at the original hearing.

I.     Standard of Review

The Second Circuit has expressly deferred the question of what legal standard applies to a motion to re-open a suppression hearing. In United States v. Bayless, 201 F.3d 116 (2d Cir. 2000), the court acknowledged that two competing rules exist. Some courts, namely the Eleventh and D.C. Circuits, require the government "to proffer a justification for its failure to present the relevant evidence at the original suppression hearing." Id. at 131. However, "[o]ther courts, citing a policy in favor of introduction of lawfully obtained evidence, have declined to impose such a justification requirement." Id. (citing decisions from the Fifth, Seventh, and Ninth Circuits). Judge Calabresi, writing for the panel, determined in Bayless that "[w]e need not decide which of these two approaches is preferable, because we find that the government adequately justified its decision not to introduce the [new] testimony . . . at the original suppression hearing" by representing that it "had no reason to believe that [the] testimony would be anything but cumulative." Id. at 131-32. While finding that the suppression hearing was properly re-opened in light of the government's "good reason why [the officer] did not testify at the first hearing," the court added that "vague notions of unfairness, that the government should not have 'two bites' off the same apple, ought not control." Id. at 132 (citations omitted).

Judges in the Southern District, confronting this open question, have determined that "in order to reopen a suppression hearing on the basis of new evidence, the moving party, whether it is the government or the defendant, must show that the evidence 'was <u>unknown to the party, and could not through due diligence reasonably have been discovered by the party</u>, at the time of the original hearing.'" United States v. Leaver, 358 F. Supp. 2d 273, 279 & n.30 (S.D.N.Y. 2005)

2

(citing multiple Southern District cases) (emphasis added); see also United States v. Pena Ontiveros, No. 07-cr-804(RJS), 2008 WL 2446824 (S.D.N.Y. June 16, 2008) (applying justification requirement and refusing to re-open hearing). Though the Second Circuit has yet to comment upon this line of cases, it is clear that they impose a standard more stringent than that invoked in Bayless itself. These courts essentially limit Bayless to its facts, pointing to a footnote in which the court reflected that Judge Baer, in conducting the original hearing, had told the parties: "I know what we have factually. . . . All right. Really then I think we're at one with respect to the facts." Bayless, 201 F.3d at 132 n.4; see Leaver, 358 F. Supp. 2d at 278. Therefore, the court noted in dicta, "the government may well have been misled by these comments into believing that Sergeant Bentley's corroborating testimony was not needed." Id. These district courts emphasize that, as a matter of policy, the Government should not be permitted "to reopen hearings as a matter of course" because it would alleviate the "pressure to litigate any pre-trial motion diligently prior to the court's decision, with disastrous consequences for 'the orderly administration of criminal justice.'" Leaver, 358 F. Supp. 2d at 280.

The court does not need to take sides in this debate because the facts presented here so closely echo those presented in Bayless. Here, as in Bayless, the Government seeks to re-open the hearing in order to offer the testimony of additional police officers on the scene, following a judicial determination that the original officer's testimony was not credible. The Government provides precisely the same justification offered in Bayless for its failure to present this evidence in the first instance, namely that it expected the testimony of additional officers to be "cumulative." (Tr. Conf. Nov. 14, 2008, at 3-4 (arguing that evidence set forth in the Submission "would be considered properly as cumulative evidence because it is the testimony of the additional members of the task force that participated in Mr. Matos' arrest").) The

3

Government clearly erred by failing to anticipate the logical holes in its account of events; the Government bears the burden of proof on a suppression motion and it is a burden to be taken seriously.[1] See United States v. Pena, 961 F.2d 333, 338-39 (2d Cir. 1992). However, it was not unreasonable for the Government to limit its evidence to the testimony of the two officers with the most direct knowledge of events, and to believe that the testimony of additional officers on the scene would only be cumulative. Given the Second Circuit's acceptance of this justification in Bayless, the court finds the Government's justification here to be similarly adequate. See also United States v. Vilar, No. 05-CR-0621(KMK), 2006 WL 871026, at *2 (S.D.N.Y. Apr. 5, 2006) (finding that "even if the Government should be required to justify its change of heart, . . . it has done so" by explaining that it originally believed the officer's testimony would be cumulative and unnecessary).

II.     Re-Opening the Hearing

The court's September 23, 2008 decision rejected the officers' allegation that they had probable cause to arrest Matos because, before Matos was detained, he threw the two Ziploc bags of cocaine to the ground in plain view of the officers outside his apartment. (M & O 8.) The affidavits of the Fugitive Task Force Team members now offered as witnesses suggest they may be able to provide probative testimony, though none of them claim that they saw Matos toss the drugs to the ground in plain view. DUSMs Ricigliano, McCloskey, and Zeppetelli report in their affidavits that they saw two Ziploc bags of drugs on the ground near Matos while Tait and Heege were speaking with him. (Submission, Ricigliano Aff. ¶ 7; McCluskey Aff. ¶ 6; Zeppetelli Aff. ¶ 6.) This testimony, if credible, could provide circumstantial support for DUSM Tait and Det. Heege's original account. The testimony of these officers and others might also be

---

[1] The Government conceded at the November 14, 2008 Conference that "we didn't provide the context necessary, in light of the specific concerns that you raised at the hearing, Judge." (Tr. 5.)

4

useful in describing the context for the Fugitive Task Force Team's actions that day, and explaining their methodology and approach.

With those acknowledgements, the court is not inclined to disrupt its well-founded determination that "[e]ach step of the officers' story defies credibility." (M & O 8-9.) Even if the suppression hearing is re-opened to admit additional evidence, the court may not find it necessary to reconsider its conclusions. Matos vehemently opposes the Government's motion, calling the submission "an attempt to overcome a weak case with cumulative testimony by Government witnesses that were available in the first instance." (Opp. ¶ 3.) Matos argues that, amongst other reasons, there is no need to re-open the hearing because the new proposed testimony "sheds little or no light on what happened at the exact moment Tait and Heege seized Mr. Matos." (Id. ¶ 7.) The initial interaction that was the subject of the court's September 23, 2008 decision "happened in a matter of seconds," and it appears the only eyewitnesses to that precise interaction already testified at the original hearing. (Tr. 9.) The court is attentive to these considerations, as well as to the challenges and limitations of re-opening a hearing after a careful decision has already been rendered. The court also remains keenly aware that numerous, troubling constitutional questions were posed by this case beyond the initial issue of probable cause.

The court is ultimately guided by the Second Circuit's warning that "vague notions of unfairness, that the government should not have 'two bites' off the same apple, ought not control." Bayless, 201 F.3d at 132. The suppression of evidence is a potent remedy for unconstitutional acts by law enforcement. In this case, the court determined not only that the officers acted unconstitutionally, but also that their testimony was not credible and possibly perjurious. If additional information is available to challenge the accuracy of those serious

5

conclusions, the court is obliged to grant an opportunity for that information to be heard. Once the Government has met the same threshold of justification set forth in Bayless, "'society's interest in admitting all relevant evidence,' which counsels strongly in favor of permitting a full consideration of all information before deciding whether to suppress evidence" should govern. Vilar, 2006 WL 871026, at *2 (citing United States v. Regilio, 669 F.2d 1169, 1177 (7th Cir. 1981)).

III. Conclusion

The court grants the Government's motion to re-open the suppression hearing to present additional testimony from the officers of the Fugitive Task Force Team.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
December 5, 2008

NICHOLAS G. GARAUFIS
United States District Judge